IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> $79,020 UNITED STATES CURRENCY, <br><br> Defendant. | Civil No. 8:21CV16 <br><br> **COMPLAINT FOR FORFEITURE *IN REM*** |

The United States of America, for its cause of action against the defendant property, pursuant to Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, states and alleges as follows:

### Nature of the Action

1. This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881.

### The Defendant *in rem*

2. Defendant property is $79,020 U.S. currency seized by law enforcement from Clarence E. Mack.

3. The U.S. Customs and Border Protection (CBP) currently has custody of the defendant property.

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction for an action commenced by the United States pursuant to 28 U.S.C. § 1345, and for an action for forfeiture pursuant to 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action pursuant to 21 U.S.C. § 881.

5. This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

## Basis for the Forfeiture

7. Defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, 2) proceeds traceable to such an exchange, and/or 3) money, negotiable instruments and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

## Facts

8. On August 23, 2020, Otoe County Sheriff Deputy and HSI Joint Task Force Officer James Parsons stopped a black 2020 Chevrolet Suburban that was driving slower than the prevailing rate of travel in the passing lane such that other motorists were forced to pass in the driving lane on westbound State Highway 2 near Nebraska City, Nebraska.

9. After approaching the black Suburban, Deputy Parsons identified the female driver as Cornelia Mack and the male passenger as Clarence Mack, both of North Carolina, based on their driver's licenses.

10. Mrs. Mack told Deputy Parsons that they were going to California to pick up a semi-tractor they had purchased.

11. Deputy Parsons asked where in California they were going, and they said they were driving to a small town, the name of which they could not recall.

12. Deputy Parsons thought it odd that neither Mr. Mack nor Mrs. Mack knew where they were going, and he noted that Mr. Mack seemed nervous and was breathing heavily.

13. Deputy Parsons noticed that the Chevrolet Suburban was a rental vehicle, so he asked to see the rental agreement, but Mrs. Mack said that she did not have a copy.

14. Deputy Parsons then asked if Mrs. Mack could use her phone to pull up a rental company contact, but she replied that she did not have that information saved and refused to give her phone to Deputy Parsons.

15. Deputy Parsons returned to his patrol car to create a traffic enforcement warning and to obtain routine identification checks conducted for open warrants for Mrs. and/or Mr. Mack.

16. Deputy Parsons learned that Mr. Mack was the subject of two open investigations, one by the Drug Enforcement Administration (DEA) and one by the Bureau Alcohol, Tobacco, Firearms and Explosives (ATF).

17. Mr. Mack also has an extensive criminal history including convictions for assault, kidnapping, possession of cocaine, and several other felonies.

18. While the dispatcher finished running checks on Mr. Mack, Deputy Parsons re-approached the black Suburban.

19. Deputy Parsons asked whether the Macks were transporting any illegal drugs or large amounts of currency. Mr. Mack said no.

20. Deputy Parsons then asked for consent to search the Suburban. Mr. Mack became agitated and said that because they were not under arrest, they did not have to answer any questions.

21. Deputy Parsons affirmed that they were not under arrest, but informed Mr. Mack that he intended to have his canine conduct an exterior sniff of the black Suburban.

22. Deputy Parsons lead his K-9 Blaze around the Suburban and Blaze alerted to the odor of an illegal substance emanating from the Suburban.

23. Deputy Parsons asked the Macks to step out of the Suburban so he could search the Suburban.

24. In the back of the Suburban, Deputy Parsons discovered some luggage bags. One of the bags contained a satchel with a large amount of currency inside.

25. Mr. Mack said the bag belonged to him and said that the bag contained approximately $79,000.00.

26. In the rear of the Suburban, Deputy Parsons also discovered a very large, empty duffel bag and a vacuum sealer.

27. Mrs. Mack claimed that the vacuum sealer was for "fishing" in California.

28. Deputy Parsons did not find Mrs. Mack's story credible because he did not see any other fishing equipment in the Suburban.

29. Deputy Parsons also asked Mr. Mack where the currency came from, but Mr. Mack did not give a reasonable explanation.

30. Based on his training and experience, Deputy Parsons knows that the presence of a vacuum sealer, a large amount of unexplained currency, and empty duffel bags are likely indicators of a drug transaction and/or drug distribution.

31. Based on the presence of these items, the suspicious nature of the Macks' behavior, and Blaze's alert to the odor of a controlled substance, Deputy Parsons seized the currency.

32. Deputy Parsons tested the currency and it tested positive for marijuana.

33. A count of the currency revealed that the total amount was $79,020.00.

34. In sum, the Otoe County Sheriff's Office (OCSO) and Homeland Security Investigations (HSI) seized a total of $79,020.

35. The Eighth Circuit and the District of Nebraska have found that a large sum of unexplained currency is "strong evidence" of a drug connection. *See United States v. $63,530.00*, 781 F.3d 949, 955 (8th Cir. 2015) (dishonesty about the presence of currency, amount of currency, the manner in which it was transported, and a canine alert supported forfeiture); *United States v. $64,640.00*, 2007 U.S. Dist. LEXIS 39241, *15 (D. Neb. 2007); *see also United States v. $39,873.00*, 80 F.3d 317, 319 (8th Cir. 1996) (explaining that nearly $40,000 constitutes a "large amount of cash."); *United States v. $84,615,* 379 F.3d 496, 501 (8th Cir. 2004) (carrying a large sum of cash is strong evidence of a relationship with illegal drugs).

36. U.S. Customs and Border Protection (CBP) began administrative forfeiture of the defendant $79,020.00 pursuant to 21 U.S.C. § 881(a)(6) as proceeds and/or facilitating property relating to drug trafficking. *See United States v. $59,800*, U.S. Dist. LEXIS 124285, *20-*25, (D.Neb. 2015) (facts supporting forfeiture include: drug dog's alert, amount of currency, and inconsistent explanations of travel proffered during the traffic stop regarding the currency and why it was being transported to California); *see also United States v. $124,700.00*, 458 F. 3d 822, 826 (8th Cir. 2006)("bundling and concealment of large amounts of currency, combined with other suspicious circumstances, supports a connection between money and drug trafficking"); *United States v. $117,920.00*, 413 F.3d

826, 829 (8th Cir. 2005) (among other things, quantity of currency, manner of packaging, false statements, and dog sniff sufficient to establish substantial connection to drug trafficking).

37. On October 14, 2020, U.S. Customs and Border Protection (CBP) received a claim for the defendant $79,020 U.S. currency from Clarence E. Mack.

38. Mr. Mack claimed to be the owner of the property, but he provided no further information.

## Claim for Relief

WHEREFORE the United States of America prays the defendant property be proceeded against for forfeiture in accordance with the laws, regulations and rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulations; that the costs of this action be assessed against the defendant property; and for such other and further relief as this Court may deem just and equitable.

UNITED STATES OF AMERICA,
Plaintiff

JOSEPH P. KELLY
United States Attorney

By: *(signature)*

Amy B. Blackburn (MO#48222)
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, NE   68102-1506
402-661-3700
amy.blackburn@usdoj.gov

## **VERIFICATION**

I, Andrew Vincik hereby verify and declare under penalty of perjury that I am a Special Agent with Homeland Security Investigations (HSI) that I have read the foregoing Verified Complaint *in rem* and know the contents thereof, and that the factual matters contained in paragraphs 8 through 38 of the Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with HSI.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: January 12, 2021

Andrew Vincik
Special Agent
Homeland Security Investigations